422 A.2d 1288 (1980)
Edward S. ELAM, Jr., Appellant,
v.
ETHICAL PRESCRIPTION PHARMACY, INC., Appellee.
No. 79-648.
District of Columbia Court of Appeals.
Submitted March 4, 1980.
Decided November 5, 1980.
*1289 Howard M. Rensin, Hyattsville, Md., was on the brief for appellant.
Roger W. Heald, Washington D.C., was on the brief for appellee.
Before KELLY, HARRIS and FERREN, Associate Judges.
HARRIS, Associate Judge:
This case arose from an intersectional collision between automobiles driven by appellant Edward S. Elam, Jr., and James Day, a deliveryman for appellee Ethical Prescription Pharmacy, Inc.[1] Appellant sued appellee seeking compensation for personal injuries and property damage. At the close of appellant's evidence, the trial court "regretfully" granted appellee's motion for a directed verdict on the ground that appellant had been contributorily negligent as a matter of law.[2] We reverse and remand for a new trial.

I
The collision occurred at the intersection of 13th and Decatur Streets, N.W., on the afternoon of December 23, 1976. The weather was dry and it was still daylight. Appellee's vehicle, which was being driven by Day proceeding east on Decatur Street, went through a stop sign and almost instantly was struck by appellant's car, which was traveling south on 13th Street. At that unusual intersection, there is no traffic signal controlling southbound traffic on 13th Street (although there is a light controlling northbound traffic); traffic in both directions on Decatur Street is controlled by stop signs.
Arkansas Avenue crosses 13th Street slightly north of Decatur Street. The intersection of Arkansas and 13th Street is controlled in both directions by traffic signals. For the drivers of cars proceeding south on 13th Street, traffic coming east on that uniquely short block of Decatur Street is visible from the intersection with Arkansas Avenue.
Appellant testified that he passed through the intersection with Arkansas Avenue on a green light and did not look to his right or left down Decatur Street as he approached the intersection at which the collision occurred.[3] On the basis of that testimony, the trial court ruled that appellant had failed to maintain a proper lookout for traffic on Decatur Street and therefore did not meet his required duty of care. It found appellant guilty of contributory negligence as a matter of law, and granted appellee's motion for a directed verdict.

*1290 II
In reviewing the granting of appellee's motion for a directed verdict, we must consider the evidence in the light most favorable to appellant. Singer v. Doyle, D.C. App., 236 A.2d 436, 438 (1967). The issue before us is whether appellant's failure to look down Decatur Street for approaching traffic constituted contributory negligence as a matter of law.
In intersectional collision cases, contributory negligence is almost always a question of fact. Spain v. McNeal, D.C. App., 337 A.2d 507, 510 (1975); Carter v. Singleton, D.C.App., 219 A.2d 114, 115 (1966); Shu v. Basinger, D.C.Mun.App., 57 A.2d 295 (1948). The jury must weigh the credibility of witnesses and resolve disputes as to speed and distances. Shu v. Basinger, supra, at 295-96. Only in the rare case in which "the evidence is so clear and undisputed that fair-minded men can draw only one conclusion," id., at 295-96, should there be a finding of contributory negligence as a matter of law.
The facts before us do not present such a case, and the trial court erred in granting appellee's motion for a directed verdict. It is uncontroverted that appellant had the right-of-way at the intersection in which the collision occurred.[4] As the favored driver, appellant had a duty to exercise reasonable care in entering the intersection, and the fact that he had the right-of-way must be considered in determining if he met this standard. Call, Carl, Inc. v. Deadwyler, D.C.App., 187 A.2d 701, 703 (1963); Herndon v. Higdon, D.C.Mun.App., 31 A.2d 854, 855 (1943). We cannot agree that appellant's failure to look down Decatur Street for approaching traffic comprised such a breach of this duty as to make him contributorily negligent as a matter of law.
To be sure, a favored driver is obliged to "maintain a proper lookout while approaching and entering [an] intersection." D.C. Transit System, Inc. v. Harris, D.C. App., 284 A.2d 277, 279 (1971). Also, however, as the favored driver, appellant was entitled to assume that any traffic approaching from the side street would obey the law and come to a full stop before the intersection. Call Carl, Inc. v. Deadwyler, supra, 187 A.2d at 703; Lewis v. Shiffers, D.C.Mun.App., 67 A.2d 269 (1949). Appellant assuredly was not required to anticipate that a vehicle, like that of appellee's, would ignore the stop sign and proceed directly into the intersection.[5]Call Carl, Inc. v. Deadwyler, supra, 187 A.2d at 703. Considering all of the evidence, it does not appear that the fact that appellant did not look to his right down Decatur Street was a "substantial factor" contributing, as a matter of law, to the accident. See D.C. Transit System, Inc. v. Harris, supra, 284 A.2d at 279. Even if he had looked down Decatur Street and seen appellee's car traveling east toward 13th Street, a jury reasonably could conclude that he would have continued into the intersection on the assumption that the driver of appellee's car would obey the stop sign, and that a collision would have occurred because Day failed to stop, not because appellant had sufficient time to avoid a collision.
This case is readily distinguishable from D.C. Transit System, Inc. v. Harris, supra, *1291 and Frager v. Pecot, D.C.App., 327 A.2d 306 (1974), and the trial court's reliance on those decisions was misplaced. In both of those cases, a favored driver was held contributorily negligent as a matter of law for failing to see a vehicle that already had entered an intersection and was clearly visible in the oncoming lanes of traffic.[6] Neither case involved a favored driver who did not look down a particular side street as he approached an intersection in anticipation that a crossing vehicle might fail to heed a stop sign, as occurred here. Under the circumstances of this case, the fact that appellant did not look left or right on Decatur Street cannot be ruled to have been contributory negligence as a matter of law.
Reversed and remanded for a new trial.
NOTES
[1] It is undisputed that Day was acting within the scope of his employment for appellee when the accident occurred.
[2] In this jurisdiction, the contributory negligence of the plaintiff is a complete bar to recovery. Brown v. Clancy, D.C.Mun.App., 43 A.2d 296, 298 (1945).
[3] At that moment, appellant's attention was directed forward. He testified:

When I went through the green light [at Arkansas Avenue] I knew I had the right-of-way and I knew I didn't have another traffic indication in front of me, so my attention and my eyes was directed in front of me.
[4] The Highways and Traffic Regulations for the District of Columbia, Part I, § 48, provide in part that:

[E]very driver of a vehicle approaching an intersection at which an official "Stop" sign has been erected shall come to a complete stop and after having stopped shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time that such vehicle is moving across or within the intersection. . . .
The term immediate "hazard" has been defined as "a vehicle so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the same time." Brown v. Clancy, supra, 43 A.2d at 298.
[5] Testimony at trial reflected that Day had at least been cited for a traffic violation in connection with the accident.
[6] In Harris, the favored driver collided with a bus after it had driven more than halfway across the street on which the favored driver was traveling. Harris, supra, 284 A.2d at 279. In Frager, the favored driver collided with a car making a left turn from the opposite lane of traffic after the traffic light at which they both had been stopped turned green. Frager, supra, 327 A.2d at 306. In each of those cases, in effect the court concluded that the favored driver should have seen what was there to be seen by the exercise of ordinary care, and the vehicles which were struck were in front of the favored drivers, rather than entering an intersection illegally from the side at the last instant before the collision.